# STATE *v.* CLARK.

### SEDUCTION—GENERAL REPUTATION.

The regular mode of examining into the general reputation is to inquire of the witness, first, whether he knows the *general* reputation of the person in question among his neighbors, and if his answer is in the affirmative, then he may be asked what that reputation is.

### STARE DECISIS.

*Stare decisis* is the policy of the courts, and the principle upon which rests the authority of judicial decisions as precedents in subsequent litigation; and this doctrine is not to be departed from, except when subsequent examination shows the case to have been decided contrary to principle.

APPEAL from Marion.

On the 17th of June, 1881, the appellant, William P. Clark, was indicted by the grand jury of Marion county for seducing "one Mary M. Musser, an unmarried female of previous chaste character, of the age of 16 years." He was afterwards tried, and the jury brought in a verdict of guilty as charged in the indictment. A motion for a new trial was made and overruled by the circuit court. The defendant was then sentenced to four years imprisonment in the penitentiary. From this judgment defendant appeals, assigning various grounds of error, the principal of which will be found in the opinion of the court.

*N. B. Knight and Ben. Hayden, and Bonham & Ramsey,* for appellant.

Contend that character for chastity can only be shown in two ways: First, by showing actual general deportment of the person. Second, by evidence of her *general* reputation for chastity among her neighbors.

No witness can *know* that a woman is actually chaste. He may know that she demeans herself generally as a chaste woman, or that she is generally reputed to possess purity of character among her associates. (*Page* v. *Finley,* 8 Oregon, 45; *Levenich* v. *Fraud,* 6 Oregon, 212; *Eschbach* v. *Applegate,* 47 Md., 61; 1 Wharton on Evidence, section 54; *People* v. *Brewer,* 27 Mich., 134; *White* v. *Muitland,* 71 Ill., 250; 1 Greenleaf on Evidence, section 54.)

*W. G. Piper, District Attorney, and C. B. Moores and P. H. D'Arcy,* for respondent.

The law will presume there was evidence to support the verdict, unless the contrary affirmatively appears. (*Fulton* v. *Earhart,* 4 Oregon, 64; *State* v. *Wilson,* 6 Oregon, 428; *Hallock* v. *City of Portland,* 8 Oregon, 29; *State* v. *Lyon,* 10 Iowa, 340.)

As to the exception of appellant's counsel to the calling of witnesses by the state to support and sustain the character of

the prosecutrix, after the defense had sought to impeach her testimony by introducing witnesses to prove that she was an unchaste female, we think there was no error on part of the court below in allowing the state to corroborate her testimony and sustain her character, especially when counsel for the defense attempted to prove specific acts of unchastity. The general rule that where a witness' character for truth and veracity is sought to be impeached, that the party calling the witness will be allowed to sustain the witness' character, we think, will not be questioned by the appellant's counsel. In this case, one of the essential ingredients of the indictment was that the prosecutrix must be of previous chaste character. When the defense attacked the character of the prosecutrix, we certainly had a right, under the law, to support her character. (*State* v. *Shean*, 32 Iowa, 38; 2 Wharton's Criminal Law [18 ed.], section 177.)

By the Court, LORD, C. J.:

The first assignment of error in the bill of exceptions is to the following question in rebuttal, asked a witness for the prosecution: " If he knew what her (Musser's) character for chastity was in the neighborhood where she resided? " The argument conceded that the word character, as used in the question, was intended to be and is synonymous with reputation; but it is contended that the word *general* should be prefixed to it, as it is only the general reputation for chastity which is proposed to be inquired about by the question.

Mr. Greenleaf says that the impeaching witness " must be able to state what is generally said of the person by those among whom he dwells, or with whom he is chiefly conversant, for it is this that constitutes his general reputation or character." (1 Greenleaf's Evidence, 577.)

According to this statement of the text, it is the opinion generally entertained of a person in the neighborhood in which he resides that constitutes his general reputation or character. Now, the objection here is to the form of the

question, in that it does not ask for the *general* reputation for chastity. If the question as put would elicit an answer for less than general reputation, it is bad beyond doubt.

But may it not be argued, that when the question is asked the witness: "If he knew what her reputation for chastity was in the neighborhood where she resided?" that reputation is here used, not in a limited but in an unqualified sense, and means *general* reputation, and that the question would be commonly so understood. When it is said of a person that he has a good or bad reputation, it is only meant to convey the opinion generally entertained of such person.

Reputation being then what is generally said of a person in his community, does not the question as above suggested, inquire and call for an answer which will reflect what is generally said of such person, and is this not the general reputation? It is true this argument admits that the inquiry must be directed to her general reputation for chastity, but it claims that the form of the inquiry is immaterial, provided by its terms it calls for the general reputation, and is not objectionable in other respects.

"Any question," says Judge Thurman, "not leading, that asks for the general reputation of the witness for truth is sufficient; and if the word reputation, when unqualified, does *ex vi termini*, or in common parlance, mean general reputation, as we think it does, it is unnecessary to prefix the word *general.*" (*French* v. *Millard*, 2 Ohio St., 50.)

But it is claimed by the appellant, that to avoid the many embarrassing questions which would arise for construction, and delay the administration of justice, our court has definitely settled the form of the inquiry in cases of this character, and required the word *general* to be prefixed to " reputation." In *Finly* v. *Page*, 8 Oregon, 46, the witness was asked what the reputation of the party for chastity was—omitting the word general—and the court held the question objectionable, because the witness was asked as to " her reputation instead of

her *general* reputation among her neighbors," and reversed the judgment and ordered a new trial.

In our judgment this is decisive of the case before us, unless *Finly* v. *Page, supra,* is to be overruled. We imagine it would be difficult to find a case overruled to maintain a conviction. *Stare decisis* is the policy of the courts, and the principle upon which rests the authority of judicial decisions as precedents in subsequent litigation, and this doctrine ought not to be departed from, except when subsequent examination shows the case to have been decided contrary to principle.

The court having erred in admitting the witness to testify as alleged in the first assignment of error, it becomes unnecessary to consider the other questions presented. The judgment is reversed, and this case will be remanded to the court below for a new trial.